IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| STEPHEN DEWAYNE GRAY, | ) | |
| AIS # 268558, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:23-cv-00111-BL |
| | ) | |
| ROLANDA CALLOWAY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Stephen Dewayne Gray, an inmate proceeding *pro se*, filed an Amended

Complaint under 42 U.S.C. § 1983.[1] (Doc. 16). The Amended Complaint names

Rolanda Calloway, Wanda Sykes, and Correctional Officer Hopkins[2] as defendants,

all of whom were employed at Elmore Correctional Facility at the time of the alleged

events. (*Id*. at 1 & 2). It alleges that, beginning on October 26, 2022, Defendants

denied the Plaintiff access to the courts, retaliated against him, and tampered with

---

[1] The Amended Complaint is the operative pleading in this action. *See Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) ("An amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.") (internal quotations and citation omitted).

[2] Defendants have demonstrated that the individual the Plaintiff identifies as "Wanda Sykes" is in fact named "Tracy Sykes" and that the individual the Plaintiff identifies as "Correctional Officer Hopkins" is in fact named "Sara Hopkins." (Doc. 59 at 1; *see also* Docs. 59-7 & 59-8). The clerk of court is **DIRECTED** to update the docket accordingly.

his mail.  (*See* Docs. 16 & 16-1).  As a result, the Plaintiff seeks declaratory and injunctive relief as well as monetary damages.  (Doc. 16-1 at 10).

The Defendants have filed a Motion for Summary Judgment (Doc. 59) with supporting evidentiary materials (docs. 59-1 through 59-9), and the Plaintiff has filed a response[3] (doc. 67) with supporting evidentiary materials (doc. 67-1).  Upon review and consideration of the parties' filings, and for the reasons explained below, Defendants' Motion for Summary Judgment (doc. 59) will be **GRANTED** and this case will be **DISMISSED** with prejudice.

## I. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

---

[3] On October 3, 2025, the court issued an Order directing the Plaintiff to file a response to the Motion for Summary Judgment by November 3, 2025. (Doc. 63).  The Plaintiff thereafter filed a document entitled "Motion for Summery Judgement, in pursuant to Federal Rule of Civil Procedure 56." (Doc. 67).  However, despite that designation, the filing contains no legal argument or claim for relief and instead consists solely of evidentiary submissions presumably in support of the claims in the Amended Complaint.  *See* Fed. R. Civ. P. 56(a) (providing that a motion for summary judgment must "identify[] each claim or defense . . . on which summary judgment is sought").  Thus, the court interprets the filing as a response in opposition to Defendants' Motion for Summary Judgment.

that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some

3

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)–(B).  If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted).  "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (internal quotations and citations omitted).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary

4

judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted).   Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## II. RELEVANT FACTS[4]

The following facts derive from the sworn or verified pleadings and evidentiary materials proffered by both parties.[5]   (*See* Docs. 16 & 16-1; 30-1 through 30-5; 59-1 through 59-9; 67 & 67-1).   On August 1, 2022, the Plaintiff filed a habeas corpus petition under 28 U.S.C. § 2254 in the Middle District of Alabama.   (Doc. 16-1 at 5; Doc. 59-1).   On August 2, 2022, the petition was transferred to the

---

[4] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts.   *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

[5] When considering a motion for summary judgment, the court "need consider only the cited materials, but it may consider other materials in the record."   Fed. R. Civ. P. 56(c)(3) (emphasis added).   However, "[u]nsworn statements may not be considered by a district court in evaluating a motion for summary judgment."   *Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003), *as amended* (Sept. 29, 2003)).

Northern District of Alabama.  (Doc. 16-1 at 5; Doc. 59-2).[6]  On September 30, 2022, the Plaintiff went to pick up his legal mail, and Defendants Sykes and Hopkins were present when he arrived.  (Doc. 16-1 at 6).  Defendant Sykes opened the Plaintiff's mail in front of him and stated, "Oh you filing something on the Warden huh." (*Id*.).  The Plaintiff responded that Defendant Sykes was supposed to check for contraband, not read his legal mail, and Defendant Sykes "threw the legal mail at [the Plaintiff] and it hit the floor."  (*Id*.).

On November 3, 2022, the Northern District issued an order giving the Plaintiff 21 days to reply to the Respondents' answer in his habeas action. (*Id*.; Doc. 59-2 at 2).  The Plaintiff received that order on or around November 10, 2022. (Doc. 16-1 at 6).  On November 11, 2022, the Plaintiff submitted a request slip to Defendants stating, "the court said an answer was filed but he had not received it and if they had it would they give it to him." (*Id*. at 7).  The Plaintiff did not receive a response to his request. (*Id*.)  The Plaintiff then notified the Northern District that he had not received a copy of the answer, and the Northern District ordered the Respondents to send the Plaintiff another copy.  (*Id*.; Doc. 59-2 at 3).

---

[6] "[A] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Auto-Owners Ins. Co. v. Morris*, 191 F. Supp. 3d 1302, 1304 (N.D. Ala. 2016) (quoting *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)).

On or around December 12, 2022, the Plaintiff again went to pick up his legal mail, and Defendant Hopkins told the Plaintiff he had two pieces of mail "with a grin on her face." (Doc. 16-1 at 7). The two pieces of mail the Plaintiff received were the Respondents' answer dated October 26, 2022, and the same answer dated December 12, 2022. (*Id*.). The Plaintiff asked Defendant Hopkins why he was just receiving the first answer, and Defendant Hopkins replied, "I don't know I guess you shouldn't have been talking crazy to her," referring to Defendant Sykes. (*Id*.).

In December of 2022, the Plaintiff submitted a filing in his habeas corpus action complaining that his legal mail had been withheld, and the Northern District struck that filing and directed the Clerk of Court to file the document as a new civil rights action. (*Id*. at 8; Docs. 1 & 2). That action was subsequently transferred to this court on February 27, 2023, resulting in the instant action. (Docs. 3 through 5).

On February 28, 2023, the Northern District magistrate judge assigned to the Plaintiff's habeas petition entered a Report and Recommendation that his § 2254 petition be denied on procedural grounds. (Doc. 16-1 at 8; Doc. 59-2 at 3). The Plaintiff received the Report and Recommendation on March 3, 2023. (Doc. 16-1 at 8). The Plaintiff sought two extensions to file objections, and the Northern District granted both of those requests, extending the Plaintiff's objection deadline to April 7, 2023. (*Id*.; Doc. 59-2 at 3). On April 4, 2023, the Plaintiff filed his objections to the Report and Recommendation by placing his legal mail in the institutional legal

7

mailbox for delivery.  (Doc. 16-1 at 8).  The Plaintiff "does not know [who] was working the mail room at that time."  (*Id.*).

On April 19, 2023, the Northern District issued a Memorandum Opinion and Final Order denying the Plaintiff's § 2254 petition and stating that the Plaintiff did not file any objections by the extended deadline. (Doc. 16-1 at 8–9; Doc. 59-2 at 3–4).  However, later that same day, the Plaintiff's objections to the February 28 Report and Recommendation were docketed.  (Doc. 59-2 at 4).  Subsequently, on May 10, 2023, the Northern District issued an Order specifically noting that the Plaintiff's objections were timely and vacating the April 19 Memorandum Opinion and Final Order.  (*Id.*; Doc. 59-4).  Finally, on May 22, 2023, the Northern District denied the Plaintiff's § 2254 petition for a second time, determining that it was time-barred. (Doc. 59-2 at 4; *see also Gray v. Calloway et al.*, No. 5:22-cv-1048-ACA-GMB (N.D. Ala. 2022) (Doc. 33)).

## III. DISCUSSION

### A. To the extent the Plaintiff seeks declaratory and injunctive relief, such claims were rendered moot by his transfer from Elmore Correctional Facility.

In a § 1983 action filed by a prisoner, a request for declaratory or injunctive relief becomes moot upon the transfer or release of that prisoner from the facility where his cause of action arose.  *See Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (quoting *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) ("[A]n

inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred.")); *see also Owens v. Centurion Med.*, 778 F. App'x 754, 759 (11th Cir. 2019) (holding that inmate's transfer to different facility since filing § 1983 complaint rendered moot his deliberate indifference claims seeking only injunctive relief); *Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007) ("The general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief.") (citations omitted), overruled on other grounds by *Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021) and abrogated on other grounds by *Sossamon v. Texas*, 563 U.S. 277 (2011).

When the Plaintiff filed his Amended Complaint, he was incarcerated at Elmore Correctional Facility, which is where his cause of action arose. (*See* Doc. 16 at 2). In February of 2024, the Plaintiff notified the court that he had been transferred to the Red Eagle Community Work Center. (Doc. 34). Thereafter, in January of 2025, the Plaintiff notified the court that he had once again been transferred, this time to the Childersburg Community Based Facility and Community Work Center. (Doc. 53). To date, the Plaintiff remains at Childersburg. Accordingly, because the Plaintiff has been transferred from the facility where his cause of action arose, the Plaintiff's claims for declaratory and injunctive relief fail to present a case or controversy and will be denied as moot.

9

**B. To the extent the Plaintiff seeks punitive or nominal damages[7] from the Defendants in their official capacities, the Defendants are entitled to sovereign immunity.**

Official capacity suits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted). As such, a state employee may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). It is well-settled that Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it. *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, to the extent the Plaintiff seeks monetary damages from the Defendants in their official capacities as employees of the Alabama Department of Corrections, the Defendants are entitled to sovereign immunity.[8] *See, e.g., Selensky*

---

[7] Under the Prison Litigation Reform Act ("PLRA"), a prisoner must prove he suffered a more than *de minimis* physical injury to recover compensatory damages. *Thompson v. Smith*, 805 F. App'x 893, 900–01 (11th Cir. 2020) (citation omitted). In this case, it is undisputed that the Plaintiff did not suffer *any* physical injury as a result of Defendants' alleged actions. Thus, even if he were to succeed on his claims, he would not be entitled to compensatory damages and would at most be entitled to punitive and nominal damages. *See Furman v. Warden*, 827 F. App'x 927, 935 (11th Cir. 2020) ("For a non-lawyer, *pro se* litigant (at least), a plea for compensatory damages or for general damages, includes nominal damages: the greater includes the lesser.") (citations omitted); *see also Hoever*, 993 F.3d at 1356 ("We now recognize that [the PLRA] permits claims for punitive damages without a showing of physical injury.").

[8] Additionally, "neither a State nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989);

10

*v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277–78 (11th Cir. 1998); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995).

**C. To the extent the Plaintiff seeks punitive or nominal damages from the Defendants in their individual capacities, the Defendants are entitled to qualified immunity.**

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court has "repeatedly … stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (citation omitted).

The Eleventh Circuit has explained:

> To determine whether a government actor is entitled to qualified immunity from a section 1983 claim, "we engage in a burden-shifting analysis." *Brooks v. Miller*, 78 F.4th 1267, 1280 (11th Cir. 2023).  The burden first rests with the government actor, who "must show that he was acting within the scope of his discretionary authority when he committed the challenged acts." *Id*.  If the government actor establishes that he acted within his discretionary authority, "the burden shifts" to the complaining party, "who must show that qualified immunity is not appropriate." *Id*.  To make that showing, the complainant must

*see also Carr*, 916 F.2d at 1525 n.3 ("[S]tate officials acting in their official capacities are not 'persons' subject to liability under 42 U.S.C. § 1983.").

11

> establish that: (1) the government actor violated his constitutional or statutory right and (2) the unconstitutionality of that conduct was clearly established at the time of the violation. *Wilson v. Sec'y, Dep't of Corr.*, 54 F.4th 652, 660 (11th Cir. 2022).

*Hughes v. Locure*, 166 F.4th 121, 127 (11th Cir. 2026).

It is undisputed that all Defendants were acting within the scope of their discretionary authority when the challenged conduct occurred in this case. (*See, e.g.*, Doc. 16-1 at 5, providing that "[a]t all times relevant herein, each Defendant was acting . . . in the course and scope of their employment"). Thus, the burden shifts to the Plaintiff to present evidence that Defendants violated his constitutional right and that the unconstitutionality of that conduct was "clearly established." *See Hughes*, 166 F.4th at 127 (citing *Wilson*, 54 F.4th at 660).

"To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotations and citations omitted). The court may analyze these elements "in whatever order is deemed most appropriate for the case," and a finding of qualified immunity is appropriate if sufficient evidence has not been presented as to any one of the elements. *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010), *aff'd* 566 U.S. 356 (2012) (citing *Pearson*, 555 U.S. 223).

12

Upon careful review and consideration of this record, and as explained below, the court concludes that Defendants are entitled to qualified immunity because the Plaintiff has failed to demonstrate that any Defendant committed a constitutional violation.

### i. Access to the Courts

First, the Plaintiff has failed to establish a genuine issue of material fact as to his First or Fourteenth Amendment access to the courts claim[9] sufficient to overcome qualified immunity or summary judgment. "To bring an access to the courts claim, an inmate 'must show actual injury in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement.'" *Juiffre v. Broward Sheriff's Off.*, 717 F. App'x 886, 888 (11th Cir. 2017) (quoting *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998)). "The impairment of any other 'litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.'" *Id.* "In order to show actual injury, a plaintiff must show 'deterrence, such as a denial or dismissal of a [nonfrivolous] direct appeal, habeas petition, or civil rights case that results from actions of prison officials.'" *Hall v.*

---

[9] *See Cranford v. Nevada Dep't of Corr.*, 398 F. App'x 540, 546 (11th Cir. 2010) ("Access to the courts is a constitutional right that is grounded in several constitutional amendments, including the First Amendment and the Fourteenth Amendment.") (citing *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003) and *Barbour v. Haley*, 471 F.3d 1222, 1224 n.2 (11th Cir. 2006) (noting that prisoners' claim that they had been denied meaningful access to the courts implicated both the First and Fourteenth Amendments)).

*Sec'y for Dep't of Corr.*, 304 F. App'x 848, 850 (11th Cir. 2008) (quoting *Al-Amin v. Smith*, 511 F.3d 1317, 1332 (11th Cir. 2008)).

The evidence before this court fails to demonstrate that the Plaintiff suffered an actual injury resulting from Defendants' alleged actions. Although the Northern District *initially* denied the Plaintiff's § 2254 petition and stated that the Plaintiff did not file any objections by the extended deadline (*see* Doc. 16-1 at 8–9; Doc. 59-2 at 3–4), the Northern District immediately thereafter received the Plaintiff's objections, found them to be timely, and vacated the order denying the petition (*see* Doc. 59-2 at 4; Doc. 59-4). Although the Plaintiff's petition was denied again weeks later (*see* Doc. 59-2 at 4), there is no evidence that the second and final denial was a result of the Defendants' alleged actions or the Plaintiff's inability to pursue his claims. On the contrary, the evidence demonstrates that the Plaintiff was in fact able to pursue his claims; that the Northern District considered but overruled his timely objections; and that the Northern District ultimately denied the Plaintiff's petition because it was found to be time-barred.

As such, the Plaintiff has failed to demonstrate either that he was unable to pursue his § 2254 action or that he suffered an actual injury, such as a denial or dismissal of a non-frivolous direct appeal, habeas petition, or civil rights case, based on the Defendants' alleged conduct with the Plaintiff's mail. *See Hall*, 304 F. App'x at 850 (quoting *Al-Amin*, 511 F.3d at 1332). Accordingly, the Defendants are

entitled to qualified immunity and their motion for summary judgment will be granted as to the Plaintiff's access to the courts claim.

### ii. Retaliation Claim

Second, the Plaintiff has failed to establish a genuine issue of material fact as to his First Amendment retaliation claim sufficient to overcome qualified immunity or summary judgment. "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) (citing *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989)). To succeed on a First Amendment retaliation claim, a plaintiff must demonstrate that "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the [defendant's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Williams v. Radford*, 64 F.4th 1185, 1192 (11th Cir. 2023) (quoting *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008)).

In this case, the Plaintiff asserts that the Defendants' actions "were in retaliation for [him] exercising his right to petition the government for a redress of grievances." (Doc. 16-1 at 3, 9). The filing of a lawsuit constitutes protected speech under the First Amendment, *see Bennett v. Chitwood*, 519 F. App'x 569, 575 (11th Cir. 2013), and the Plaintiff has thus demonstrated that he engaged in speech that

15

was constitutionally protected.  However, the Plaintiff has failed to satisfy both the adverse action and causal relationship elements of his retaliation claim.

As an initial matter, a "*de minimis* inconvenience in the exercise of First Amendment rights" does not amount to an adverse action under the First Amendment.  *Bennett v. Hendrix*, 423 F.3d 1247, 1253 (11th Cir. 2005), abrogated in part on other grounds by *Pearson*, 555 U.S. 223; *see also Wilkinson v. GEO Grp., Inc.*, 617 F. App'x 915, 919 (11th Cir. 2015) (affirming dismissal of retaliation claims against individuals who allegedly seized the plaintiff's gym shorts and refused to pay postage for the plaintiff's legal mail and finding that "the district court did not abuse its discretion when it decided that the alleged retaliation was too minimal to meet the standard for retaliation claims, especially where the gym shorts and money were returned to [the plaintiff].") (citation omitted); *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (explaining that the purpose of the "ordinary firmness" standard is to "weed out . . . inconsequential actions" and "avoid trivializing the First Amendment by eliminating suits based upon insignificant acts of retaliation").

Other courts have determined that a temporary delay in the receipt of legal mail, without more, is insufficient to establish an adverse action.[10]  The court finds

---

[10] *See, e.g.*, *Jordan v. Wetzel*, No. CV 16-307, 2019 WL 1382512, at *5 (W.D. Pa. Mar. 27, 2019) ("The mere delay [in receipt of legal mail] of less than two months is not sufficient to establish an adverse action for purposes of stating a retaliation claim."); *Green v. Niles*, No. 11 Civ. 1349 (PAE), 2012 WL 987473, at *5 (S.D.N.Y. Mar. 23, 2012) ("Courts in this circuit have . . . held that limited withholding or delay of a prisoner's mail does not constitute an adverse action sufficient to support a retaliation claim."); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y.

these holdings persuasive.  Upon careful consideration of this record, the court similarly finds the temporary, delayed receipt of the Plaintiff's legal mail on one occasion—and which did not result in any injury—unlikely to deter a person of ordinary firmness from engaging in protected speech.

Notably, the Plaintiff's belief that the Respondents' first answer dated October 26, 2022, was purposefully withheld from him—rather than inadvertently delayed—is largely speculative, as there is no evidence before the court demonstrating when the first answer arrived at Elmore Correctional Facility or what happened to it prior to the Plaintiff's receipt of it on December 13, 2022.[11]  The only evidence the

---

2010) ("Courts in this circuit have held that claims of mail tampering do not constitute adverse action."); *Toolasprashad v. Williams*, No. 09-5335 (RBK), 2009 WL 5103185, at *3 (D.N.J. Dec. 17, 2009) (holding 63-day delay in receipt of legal mail insufficient to establish adverse action absent any injury); *Islam v. Goord*, No. 05-cv-7502, 2006 WL 2819651, at *7 (S.D.N.Y. Sept. 29, 2006) ("Plaintiff also suggests that [a defendant's] alleged tampering with his family and legal mail was retaliatory.  However, this is not the type of conduct that would deter an ordinary individual from exercising his constitutional rights.  Plaintiff does not allege that he suffered any injury as a result of the alleged tampering, and therefore these isolated instances of mail tampering are not adverse actions supporting a cause of action for First Amendment retaliation.").

[11] The Plaintiff has proffered the envelope in which the Respondents' first answer was purportedly contained, which includes a United States Postal Service ("USPS") postmark dated "Oct 27." (Doc. 30-2).  The Plaintiff believes that this "verifies that the legal mail from [his] habeas action arrived on this date at Elmore Correctional Facility." (Doc. 30-1 at 1).  However, according to the official USPS website, the date on a postmark represents "the date on which the first automated processing operation was performed on that mailpiece" at a USPS facility—<u>not</u> the date it arrived at its intended location.  *See* https://about.usps.com/newsroom/statements/010226-postmarking-myths-and-facts.htm (last visited on March 10, 2026); *see also Coastal Wellness Centers, Inc. v. Progressive Am. Ins. Co.*, 309 F. Supp. 3d 1216, 1220 n.4 (S.D. Fla. 2018) ("The Court may take judicial notice of government publications and website materials."); *see also R.S.B. Ventures, Inc. v. F.D.I.C.*, 514 F. App'x 853, 856 n.2 (11th Cir. 2013) (taking judicial notice of information found on the FDIC's website); *Lamonte v. City of Hampton, Ga.*, 576 F. Supp. 3d 1314, 1327 (N.D. Ga. 2021) ("It is established law that a court may take judicial notice of government websites.") (citing Fed. R. Evid. 201(b)(2)).  Thus, it is wholly unclear from this record when the first answer actually arrived at Elmore or came into the Defendants' possession.

17

Plaintiff has produced to suggest that his legal mail was purposefully withheld is that, when he asked Defendant Hopkins why he was just receiving a piece of mail executed on October 26, 2022, Defendant Hopkins purportedly replied, "I don't know I guess you shouldn't have been talking crazy to her," referring to Defendant Sykes.  (Doc. 16-1 at 7; *see also* Doc. 30-1 at 2).

The only other material example of alleged mail interference the Plaintiff attempts to present is that someone—he admittedly does not know who—interfered with his outgoing legal mail because he placed it in the mailbox "on or about April 4, 2023" and it was received by the Northern District 15 days later, on April 19, 2023.  (Doc. 16-1 at 8; Doc. 30-1 at 3).  However, the record is devoid of evidence that anyone, much less a named Defendant, purposefully interfered with such mail or did so based on a retaliatory motive.  *See Smith v. Fla. Dep't of Corr.*, 375 F. App'x 905, 911 (11th Cir. 2010) (affirming dismissal of prisoner-plaintiff's retaliation claim because he did not demonstrate "a sequence of events from which one could, without more, plausibly infer a retaliatory motive").

To the extent the Plaintiff vaguely alleges other instances of mail interference (*see* Doc. 16-1 at 2, stating that "there have been numerous undue delays in receipt of [the Plaintiff's] legal mail" and Doc. 30-1 at 3, stating that "[t]he tampering with [the Plaintiff's] mail is ongoing"), such allegations are too vague and conclusory to establish a constitutional violation.  *See Owens v. Sec'y of Fla. Dep't of Corr.*, 812

F. App'x 861, 870 (11th Cir. 2020) (citing *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("[The Eleventh Circuit] has consistently held that conclusory allegations without specific supporting facts have no probative value.")). Thus, at most, the Plaintiff has presented evidence of one instance of delayed mail for an unknown—but less than two-month—period of time that did not result in any injury to him. The court finds this evidence insufficient to establish an adverse action such that it would likely deter a person of ordinary firmness from engaging in protected speech.[12]

Moreover, even if the evidence before the court was sufficient to satisfy the adverse action element of a retaliation claim, the evidence further fails to demonstrate a causal relationship between the retaliatory action and the Plaintiff's protected speech. As noted above, when the Plaintiff asked Defendant Hopkins why he was just receiving the Respondents' first answer, Defendant Hopkins replied, "I don't know I guess you shouldn't have been talking crazy to her," referring to Defendant Sykes. (Doc. 16-1 at 7; *see also* Doc. 30-1 at 2). This statement suggests that the Defendants interfered with the Plaintiff's mail because he told Defendant

---

[12] Indeed, while the adverse action test directs the court to consider a person of ordinary firmness, "the plaintiff's actual response to the defendant's conduct 'provides some evidence of the tendency of that conduct to chill First Amendment activity.'" *Bethel v. Town of Loxley*, 221 F. App'x 812, 813 (11th Cir. 2006) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005)). In this case, the Plaintiff was wholly undeterred by any purported delay and instead vigorously pursued both his habeas corpus action in the Northern District and the instant action. Thus, although not dispositive, the Plaintiff's lack of deterrence further supports the court's conclusion.

Sykes she was supposed to check for contraband and not read his legal mail, not because the Plaintiff filed a lawsuit. (*See* Doc. 16-1 at 6).

"Courts have expressed skepticism that verbal complaints, as opposed to formal grievances, are constitutionally protected speech." *Money v. Gibbs*, No. CV423-243, 2024 WL 5168090, at *5 (S.D. Ga. Dec. 19, 2024) (citing *Burton v. Hair*, No. 3:22-cv-6325-MCR-HTC, 2023 WL 8723686, at *7 (N.D. Fla. Sept. 28, 2023) (holding that inmate's verbal requests for the return of his Bible did not constitute protected speech) and *Daker v. Head*, No. 6:14-cv-47, 2019 WL 11005452, at *19 (S.D. Ga. Dec. 20, 2019) ("[V]erbal complaints by inmates, without more, are likely not constitutionally-protected speech.")); s*ee also Davis v. United States*, 272 F. App'x 863, 868 (11th Cir. 2008) (expressing doubt that inmate's belligerent verbal complaint about his cell assignment was constitutionally protected). Thus, the Plaintiff has failed to produce evidence sufficient to support a conclusion that the Defendants took any retaliatory action against him based on clearly established constitutionally protected speech.

Accordingly, because the Plaintiff has failed to demonstrate a sufficiently adverse action resulting from clearly established, constitutionally protected speech, the Defendants are entitled to qualified immunity and their motion for summary judgment will be granted as to the Plaintiff's retaliation claim.

20

### iii. Mail Tampering Claim

Finally, the Plaintiff has failed to establish a genuine issue of material fact as to his First Amendment mail interference claim sufficient to overcome qualified immunity or summary judgment. "[T]he right to send and receive mail exists under the First Amendment." *Al-Amin*, 511 F.3d at 1333 (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). Moreover, a free speech claim under the First Amendment does not require the plaintiff to suffer an actual injury. *See Al-Amin*, 511 F.3d at 1334 ("[T]he actual injury requirement applies to access-to-courts claims but not to free speech claims."). Instead, the court must analyze whether a defendant's conduct "sufficiently chills, inhibits, or interferes with" a plaintiff's "ability to speak, protest, and complain openly." *See id.*

Numerous courts have determined that "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation[.] Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" *Parker v. Pugh*, No. 2:22-cv-722-CLM-HNJ, 2024 WL 1600333, at *14 (N.D. Ala. Jan. 31, 2024) (quoting *Dees v. Lamar*, No. 2:20-cv-1326-LSC-GMB, 2021 WL 1953137, at *10 (N.D. Ala. Mar. 4, 2021) (holding

21

allegation that defendants withheld a money order for the plaintiff's legal matters and caused legal mail to be held up insufficient to state a First Amendment claim)).[13]

As explained herein, the Plaintiff has at most provided evidence of one instance of delayed mail. This single instance fails to demonstrate that any Defendant "regularly and unjustifiably interfered" with his mail such that it "sufficiently chills, inhibits, or interferes with" the Plaintiff's "ability to speak, protest, and complain openly." *See Al-Amin*, 511 F.3d at 1334. Accordingly, the Defendants are entitled to qualified immunity and their motion for summary judgment will be granted as to the Plaintiff's mail tampering claim.

---

[13] *See also Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (finding two instances of mail interference insufficient to state a claim); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (affirming dismissal of First Amendment free speech claim because "the delays in receiving mail . . . were relatively short-term and sporadic"); *McGathey v. Osinga*, No. 2:17-cv-56-FTM-29MRM, 2017 WL 1079988, at *5 (M.D. Fla. Mar. 22, 2017) (dismissing First Amendment free speech claim because "Plaintiff's allegations against [the defendant did] not reflect that he 'regularly and unjustifiably' interfered with Plaintiff's mail; rather, the alleged interference by [the defendant] appears to have occurred on only one occasion."); *Reid v. Miree*, No. 2:15-cv-1342–RDP–TMP, 2015 WL 9581390, at *3 (N.D. Ala. Nov. 18, 2015) ("The plaintiff alleges only one incident where he did not receive a letter containing stamps from his sister. This allegation falls far short of a claim that a defendant 'regularly and unjustifiably' tampered with the plaintiff's mail."); *O'Connor v. Carnahan*, No. 3:09-cv-224, 2014 WL 293457, at *6 (N.D. Fla. Jan. 27, 2014) ("Plaintiff's allegations against [the defendant] do not reflect that she 'regularly and unjustifiably' interfered with Plaintiff's mail; rather, the interference by [the defendant] of which Plaintiff complains occurred on only one occasion."); *Huey v. Philbin*, No. 7:12-cv-97 (HL), 2013 WL 3816684, at *6 (M.D. Ga. July 22, 2013) ("[A]llegations of sporadic interference with incoming mail are insufficient to state a First Amendment claim."); *Pro v. Lt. Bandy*, No. 2:08-cv-175-RWS, 2008 WL 4445080, at *3 (N.D. Ga. Sept. 25, 2008) ("Plaintiff's failure to receive [mail] on four occasions is insufficient to state a First Amendment claim."); *McKinnon v. James*, No. 3:03CV2274/SRU, 2005 WL 1074466, at *3 (D. Conn. May 5, 2005) ("To state a claim for the violation of [the First Amendment right to free flow of mail], an inmate must allege more than a single instance of interference with his mail.").

22

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED** that:

1.      The Defendants' Motion for Summary Judgment (doc. 59) is **GRANTED**;

2.      This case is **DISMISSED** with prejudice; and

3.      All pending motions are **DENIED** as **MOOT**.

Final Judgment will be entered separately.

**DONE** and **ORDERED** this the 13th day of March, 2026.

_____
BILL LEWIS
UNITED STATES DISTRICT JUDGE

23